IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM L. PRUITT, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 08-423-JJF |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant. | : | |

Gary Linarducci, Esquire of LINARDUCCI & BUTLER, New Castle, Delaware.
Of Counsel: David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC, Philadelphia, Pennsylvania.

Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Eric P. Kressman, Esquire, Acting Regional Chief Counsel and Edward C. Tompsett, Esquire of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

July 14, 2010
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, William L. Pruitt, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Plaintiff has filed a Motion For Summary Judgment (D.I. 16) requesting the Court to reverse the decision of the Commissioner and direct an award of benefits, or in the alternative, to remand this matter to the Administration for further development and analysis. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 18) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted. The decision of the Commissioner dated November 1, 2007, will be reversed, and this matter will be remanded to the Administration for further findings and/or proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### I. Procedural Background

Plaintiff filed his application for SSI on June 28, 2005, alleging disability since March 8, 2005, due to injuries sustained in two motor vehicle accidents. (Tr. 51). Plaintiff's application was denied initially and upon reconsideration. (Tr. 35-39, 41-45). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). On November 1, 2007, the A.L.J. issued a decision denying Plaintiff's application for SSI. (Tr. 10-20). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 4-6). The Appeals Council denied Plaintiff's request for review, and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for SSI. In response to the Complaint, Defendant filed an Answer (D.I. 12) and the Transcript (D.I. 14) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and

Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was 26 years old. (Tr. 20, 51). Plaintiff has a ninth grade education. (Tr. 383). His past work included construction and carpentry work. (Tr. 384-385).

By way of brief summary, Plaintiff was injured in two car accidents, the first in March 2005, and the second in July 2006 (Tr. 383, 391). After the first accident, Plaintiff fractured his left tibia, suffered a concussion, experienced abdominal bleeding, and lacerated his spleen and liver. His spleen and appendix were removed, and Joseph J. Mesa, M.D., operated to repair his left tibia. A plate was inserted and stabilized with screws. Plaintiff was instructed not to bear weight on his leg, and Dr. Mesa anticipated that Plaintiff would be able to return to work in six months. (Tr. 261). However, Plaintiff began walking prematurely, and as a result, fractured the plate in his leg. A second surgery followed on May 24, 2005, to remove the plate and graft the bone. (Tr. 148-149). In August 2005, Dr. Mesa opined that Plaintiff would be able to return to work in six

months. (Tr. 242). In September 2005, Dr. Mesa restricted Plaintiff to no kneeling, no lifting and no squatting, and anticipated his return to full duty by March 2006. The plate in Plaintiff's leg was removed on January 3, 2006. Plaintiff was instructed to attend physical therapy and bear weight as tolerated. (Tr. 226). By February 8, 2006, Plaintiff had still not begun physical therapy. (Tr. 225).

On September 15, 2005, Dr. Borek, a state agency physician reviewed Plaintiff' records and determined that he was not disabled. (Tr. 192-201). On March 16, 2006, Dr. V.K. Kataria affirmed Dr. Borek's assessment. (Tr. 284-291).

Plaintiff was in a second motor vehicle accident on July 16, 2006. (Tr. 391). Plaintiff sustained a burst fracture of his first lumbar vertebra, a thecal sac compression, and another concussion. (Tr. 305). Pawan Rastogi, M.D. performed an emergency laminectomy and decompression, with reduction of the L1 burst fracture and fusion from T12 to L2. (Tr. 306). He returned to the hospital in August 2006, for a wound infection. In September 2006, Dr. Rastogi noted that Plaintiff was doing well, but had increasing back pain due to a fall on the stairs. (Tr. 301). In May 2007, Dr. Rastogi noted that Plaintiff was making good progress, but that he continued to have pain, particularly when sitting, and that he could feel the rods in his back. He recommended that Plaintiff increase his activity level.

(Tr. 299). On August 28, 2007, Dr. Rastogi provided a statement that Plaintiff was unable to work from July 16, 2006 through August 28, 2007. (Tr. 374). He also completed a residual functional capacity ("RFC") assessment limiting Plaintiff to two hours of standing or walking and four hours of sitting in an eight hour work day, noting that Plaintiff would need two unscheduled breaks to lie down during the day, and would miss three to four days of work per month. Despite these limitations, Dr. Rastogi checked the box opining that Plaintiff could perform sedentary work, but then beneath it wrote, "Pt could not work related to his fracture." (Tr. 373).

In September 2007, Dr. Mesa also completed an RFC assessment limiting Plaintiff to sitting for one hour and walking for half an hour in an eight hour day. (Tr. 364-366). Dr. Mesa also opined that Plaintiff could not lift or carry any weight and would miss five to ten days of work per month.

In addition to the aforementioned physical injuries, Plaintiff also has a history of drug addiction and mental illness. His mental impairments include bi-polar disorder, impulse control disorder and attention deficit hyperactivity disorder, as diagnosed by Patricia Lifrak, M.D. (Tr. 294).

B. The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff testified. The A.L.J. consulted a vocational expert

and asked her to consider a hypothetical person with Plaintiff's age and education and suffering from the post effects of a fractured lower tibia and lumbar disc, with pain and discomfort, with some relief from medication. In addition, the A.L.J. limited his hypothetical to a person that

> needs simple, routine, unskilled jobs due to his pain and depression, jobs that are low stress in nature, concentration and memory, generally SVP 2 jobs, and . . . can lift 10 pounds occasionally, lesser amounts frequently, sit for 30 minutes, stand for 30 minutes on an alternate basis during an eight-hour day, would have to avoid climbing, balancing, and stooping, heights, and hazardous machinery, temperature and humidity extremes and vibrations.

(Tr. 403). In response, the vocational expert identified two jobs such a person could perform: (1) machine feeder with 600 jobs locally and 75,000 jobs nationally, and (2) assembler with 470 jobs locally and 70,000 jobs nationally. (Tr. 403-404).

In his decision dated November 1, 2007, the A.L.J. found that Plaintiff suffered from status post fracture of the left tibia secondary to a motor vehicle accident and status post burst fractures of the L1 and L2 lumbar vertebrae secondary to a second motor vehicle accident. The A.L.J. further found that Plaintiff had the residual functional capacity to perform sedentary work. Based on this residual functional capacity, the A.L.J. determined that Plaintiff could not perform his past relevant work, but could perform a number of other jobs existing in significant numbers in the national economy. Accordingly, the A.L.J.

concluded that Plaintiff was not under a disability within the meaning of the Act.

**STANDARD OF REVIEW**

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will

not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. §

404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his

or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence and contains several legal flaws. Specifically, Plaintiff contends that the A.L.J. (1) failed to consider the revised opinions of Dr. Mesa regarding the duration of Plaintiff's first period of disability; (2) substituted his own lay opinion for the judgment of Plaintiff's treating physicians; (3) failed to evaluate Plaintiff's

credibility regarding the disability periods at issue; and (4) failed to evaluate the severity of Plaintiff's mental impairments.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that a remand of this matter is necessary to address several deficient aspects of the A.L.J.'s decision. "[A]n A.L.J. is not free to employ his own expertise against that of a physician who presents competent medical evidence," and "'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). In this case, Plaintiff's treating physician, Dr. Mesa, offered three separate opinions on Plaintiff's condition, at least two of which were rendered after observing Plaintiff's progress with respect to the healing of his injury. The A.L.J. requested a third opinion of Dr. Mesa because he recognized certain conflicts in the previous opinions. However, the A.L.J. never mentioned this third opinion, and instead, based his decision on an opinion that was rendered in August 2005, prior to the removal of the plate in Plaintiff's leg. Although that opinion forecasted a February recovery for Plaintiff, Dr. Mesa's later opinion, rendered shortly after the plate in Plaintiff's leg was removed, revised that forecast to a later date. Specifically, Dr. Mesa stated, "I believe once he has strengthened his lower extremity, he will be able to resume

activities as tolerated." (Tr. 225). This later opinion of Dr. Mesa is probative evidence because it pertains to the progress of Plaintiff's condition and its healing vis-à-vis his activity level, and such probative evidence should be discussed by the A.L.J.[1] Fargnoli v. Massanari, 247 F.3d 34, 43-44 (3d Cir. 2001).

Defendant suggests that the A.L.J. did not need to consider this opinion or the clarifying opinion of Dr. Mesa that the A.L.J. expressly requested, because any additional time Plaintiff needed for recovery was due to his failure to adhere to the recommendations of Plaintiff's treating physicians. Defendant's argument concerning Plaintiff's non-compliance is clearly grounded in the record and is also relevant to the issue of whether Plaintiff was disabled under the Act; however, the A.L.J. never based his decision on Plaintiff's non-compliance. As Plaintiff correctly notes, the Court may not review the A.L.J.'s decision based upon independent, post hoc reasoning that is not part of the A.L.J.'s decision. See SEC v. Chenery, 318 U.S. 80, 87 (1943) (holding that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); Fargnoli, 247 F.3d at 44 n.7

---

[1] The Court also notes the importance of the time frames in Dr. Mesa's opinion, because the forecasted February 8, 2006 date for Plaintiff's recovery that the A.L.J. relied upon was just a month short of the twelve months needed for Plaintiff to establish disability.

(applying Chenery to social security cases). Further, there is a specific process for evaluating the issue of non-compliance, which the A.L.J. did not follow in this case, and which should be conducted by the A.L.J. in the first instance. See SSR 82-59, 1982 WL 31384 (1982).

In addition, the Court notes that the medical record in this case contains evidence pertaining to several mental health diagnoses made by Plaintiff's treating psychiatrist, Dr. Lifrak, including among others, bi-polar disorder. Defendant notes that Plaintiff's GAF score corresponded to only moderate limitations and contends that the A.L.J. accounted for Defendant's mental health impairments by limiting him to simple, unskilled work. However, the A.L.J. did not discuss Plaintiff's mental health condition at all in his written decision. Under step two of the sequential evaluation, the A.L.J. is required, in the first instance, to evaluate the severity of Plaintiff's mental impairments.

In sum, the Court cannot conclude that the A.L.J.'s decision is supported by substantial evidence. The A.L.J.'s decision contains legal errors which must be corrected and which may require further development of the record, including the possibility of further development of the record with respect to Plaintiff's alleged mental impairments and the limitations, if any, such impairments impose on his ability to work, if those

impairments are found to be severe by the A.L.J. Accordingly, the Court declines to impose a direct award of benefits, and instead, will remand this matter to the Administration for further findings and/or proceedings consistent with this Memorandum Opinion.

**CONCLUSION**

For the reasons discussed, the Court will grant Plaintiff's Motion For Summary Judgment and deny Defendant's Cross-Motion For Summary Judgment. The decision of the Commissioner dated November 1, 2007 will be reversed and remanded to the Administration for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.